_____
)
**LEO PAULDING and** )
**VICTORIA PAULDING,** )
) **Civil Action No.**
**Plaintiffs,** ) **17-11340-FDS**
)
**v.** )
)
**NEW PENN FINANCIAL, LLC d/b/a** )
**SHELLPOINT MORTGAGE SERVICING;** )
**BANK OF AMERICA, N.A.; and** )
**THE BANK OF NEW YORK MELLON** )
**f/k/a THE BANK OF NEW YORK,** )
)
**Defendants.** )
_____)

<u>**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS**</u>

**SAYLOR, J.**

 This is an action to prevent a mortgage foreclosure. Plaintiffs Leo and Victoria Paulding

(1) seek a declaratory judgment that their mortgage is void because the original lender was not

licensed to extend mortgage loans in Massachusetts and (2) assert claims for breach of contract,

breach of the implied covenant of good faith and fair dealing, and violation of Mass. Gen. Laws

Chapter 93A against the present mortgagee and its present and former loan servicers.

 Defendants have filed a joint motion to dismiss the complaint. For the reasons set forth

below, that motion will be granted in part and denied in part.

**I.**   <u>**Background**</u>

 **A.**   <u>**Factual Background**</u>

The facts are set forth as alleged in the complaint, except as otherwise noted.

Leo and Victoria Paulding are co-owners of a property at 3 Glacier Path, East Sandwich,

Massachusetts. (Am. Compl. ¶¶ 1, 6). The Pauldings purchased the property on December 5, 2006. (*Id.* ¶ 10). To do so, they borrowed $585,000 secured by a mortgage on the property. (*Id.*)

Defendant New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") is the current servicer or subservicer of the Pauldings' mortgage. (*Id.* ¶¶ 8, 37). Defendant Bank of America, N.A. is the former servicer and successor to Countrywide Home Loans. (*Id.* ¶ 7). Defendant The Bank of New York Mellon f/k/a the Bank of New York ("BNY Mellon") is the trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2006-J8, Mortgage Pass-Through Certificates, Series 2006-J8 (the "Trust"), the trust that currently holds the mortgage. (*Id.* ¶¶ 9, 29).[1]

According to the complaint, the source of the mortgage loan was "America's Wholesale Lender," which purported to be a New York corporation; "America's Wholesale Lending was a *non-existent, fictitious legal entity that was never incorporated anywhere in the United States and was not authorized to conduct business in the Commonwealth of Massachusetts*"; and the funds for their loan came from Countrywide Home Loans, which was later purchased by Bank of America. (Compl. ¶¶ 7, 10-13, Ex. A).[2]

The 2006 mortgage agreement designated Mortgage Electronic Registration Systems ("MERS") as the "nominee for the Lender (AWL) and Lender's successors and assigns." (*Id.* ¶ 14, Ex. A). MERS assigned the mortgage to BNY Mellon, as trustee, in September 2012. (*Id.* ¶ 15, Ex. B).

---

[1] Defendants, in their motion to dismiss, provide the correct legal names for the entities being sued here.

[2] Defendants have produced a 1998 license from the Nationwide Multistate Licensing System Registry showing that "America's Wholesale Lender" is a tradename that Countrywide Home Loans, a licensed mortgage lender, was permitted to use. (Mot. to Dismiss Ex. A).

The complaint alleges that on August 21, 2014, Bank of America entered into a settlement agreement with the Department of Justice requiring it to forgive portions of certain borrowers' mortgage loan balances. (*Id.* ¶¶ 24-25). According to the complaint, the Trust that owns the Paulding's mortgage was explicitly listed in the settlement agreement as one whose mortgages were to be reduced under the settlement, and the settlement did not require borrowers to be in arrears on their mortgage to be eligible for forgiveness as long as the mortgage was owned by one of the listed trusts. (*Id.* ¶¶ 27-28).

The Pauldings defaulted on their mortgage payments on December 1, 2015. (*Id.* ¶ 31). According to the complaint, they did so because the interest rate of their adjustable-rate loan increased, and they could no longer afford their payments. (*Id.*).

On January 30, 2016, the Pauldings submitted a Loss Mitigation Application package to Bank of America. (*Id.* ¶ 32). They allege that based on the monthly household income provided in that application of $12,086, they were eligible for a modified monthly mortgage payment of approximately $3,021 and a reduced loan balance of $337,500 (the fair market value of the property). (*Id.* ¶ 33, 39). Instead, on April 6, 2016, they were offered a capitalized loan modification with a monthly payment of $4,071 and a capitalized modification balance of $582,000. (*Id.* ¶ 34). The Pauldings considered that unfair and deceptive conduct and sent Bank of America a demand letter pursuant to Mass. Gen. Laws ch. 93A requesting (1) $244,500 (the difference between the balance of their mortgage and the fair market value of their home) and/or (2) a modification under the Home Affordable Modification Program ("HAMP") Tier 2 or the DOJ settlement to reduce their loan to $337,500. (*Id.* ¶ 36, Ex. F).

The complaint alleges that, in May 2016, Bank of America transferred the "servicing" of the loan to Shellpoint. (*Id.* ¶ 37; *see also id.* ¶ 7 (calling Bank of America the "former

servicer")).  As the underlying mortgage loan had been assigned to BNY Mellon in 2012, a transfer of the full servicing rights would mean that, from May 2016 onward, Bank of America had no further rights or obligations with respect to the Pauldings' mortgage.  Elsewhere, however, the complaint calls Shellpoint the "servicer" or "servicing agent" for Bank of America, (*id.* ¶¶ 41, 78); calls Shellpoint a "sub-servicer" of Bank of America that is bound by Bank of America's servicing-related commitments, (*id.* ¶¶ 37, 44); and speaks of Bank of America as remaining an "investor" on the loan, with supervisory responsibilities over Shellpoint, (*id.* ¶¶ 37, 42, 85).  Taking these allegations in the light most favorable to plaintiffs, the Court will assume that the complaint is alleging that Bank of America remained the "servicer" on the loan—that is, the party owning the servicing rights—and Shellpoint became a "subservicer" on the loan—that is, a party with the contractual right to receive a fee from the servicer in exchange for the performance of day-to-day servicing functions—and thereby an agent of Bank of America.  *See Fogg v. Ocwen Loan Servicing, LLC*, 2015 WL 1565229, at *10 (D. Me. Apr. 8, 2015).

On August 17, 2016, the Pauldings submitted another Loss Mitigation Application package, this time to Shellpoint, stating that their monthly household income was $11,892.  (Am. Compl. ¶ 38).  According to the complaint, this should have entitled them to a monthly mortgage payment of $2,937 and a reduced loan balance of $337,500.  (*Id.* ¶ 39).  Instead, they were offered a capitalized modification which "raised their mortgage payment to $3,268 from its existing payment of $3,150 and did nothing to address the Plaintiffs' 'underwater' status on their loan."  (*Id.* ¶ 40).

The complaint alleges that on November 14, 2016, Ezra Bailey, a representative of Shellpoint, falsely told plaintiffs' counsel that neither Shellpoint nor Bank of America were participating in HAMP or the DOJ settlement, and Shellpoint had no obligation to comply with

those programs.  (*Id.* ¶ 44).

Following that conversation, the Pauldings sent a Chapter 93A demand letter to Shellpoint, requesting the same relief they requested from Bank of America in their previous Chapter 93A demand letter.  (*Id.* ¶ 45).

On July 10, 2017, Shellpoint sent the Pauldings a foreclosure acceleration letter.  (*Id.* ¶ 23, Ex. D).

B.      **Procedural Background**

Plaintiffs filed the complaint on April 10, 2017, in state court.  (Notice of Removal ¶ 1). Defendants removed the case to federal court, and subsequently filed a motion to dismiss the complaint for failure to state a claim.  Plaintiffs responded by filing an amended complaint, and defendants then filed a new motion to dismiss the amended complaint.  Neither party requested a hearing on the motion.

The amended complaint contains seven counts.  Count 1 seeks a declaratory judgment that "the plaintiffs' 2006 mortgage is void because America's Wholesale Lender was never incorporated in New York, never registered as a d/b/a in Massachusetts by Countrywide or Bank of America and was never licensed to conduct business as a lender in the Commonwealth," in violation of Mass. Gen. Laws ch. 255E, § 2.  (Am. Compl. ¶¶ 46-51).  Count 2 seeks a declaratory judgment that "the plaintiffs' 2006 mortgage [is] void because the 2012 assignment from MERS to Bank of New York was invalid on its face."  (*Id.* ¶¶ 52-56).  Counts 3 and 4 allege that the defendants breached the implied covenant of good faith and fair dealing and the mortgage agreement, respectively, by (1) sending an inaccurate foreclosure acceleration letter and (2) filing a foreclosure petition in the Land Court prior to sending the acceleration letter, publishing a notice of mortgage sale in the local newspaper, and filing an affidavit of compliance with the registry of deeds.  (*Id.* ¶¶ 57-68).  Counts 5 and 6 allege that Bank of America and

5

Shellpoint, respectively, engaged in unfair and deceptive trade practices in violation of Chapter 93A by failing to offer the Pauldings a modification under HAMP or the DOJ settlement. (*Id.* ¶¶ 69-81). Count 7 alleges that Bank of America's refusal to offer a modification under the DOJ settlement was a breach of the implied covenant of good faith and fair dealing. (*Id.* ¶¶ 82-87).[3]

## II.    Standard of Review

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the facts as alleged do not "possess enough heft to sho[w] that [plaintiff is] entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir.2008) (alterations in original) (quoting *Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008)) (internal quotation marks omitted).

## III.    Analysis

### A.    Counts 1 and 2

Count 1 seeks a declaratory judgment that the mortgage is void on the grounds that

---

[3] Plaintiffs' complaint also contains a request for a preliminary injunction restraining foreclosure. Plaintiffs have not filed any papers purporting to show why such an injunction is appropriate here. If plaintiffs still desire a preliminary injunction, they may file a motion for that relief.

America's Wholesale Lender was (1) never incorporated, (2) never registered with the Commonwealth as a d/b/a, and (3) never authorized to conduct business in the Commonwealth. (Am. Compl. ¶ 47). Plaintiffs cite to Mass. Gen. Laws ch. 255E, § 2, which provides in part that "[n]o person shall act as a mortgage broker or mortgage lender with respect to residential property unless first obtaining a license from the commissioner [of banks]." (*Id.* ¶ 48).[4] Count 2 similarly seeks a declaratory judgment that their mortgage is void on the ground that the assignment from MERS to Mellon is invalid because MERS was the agent of a fictitious corporation with no authority to issue mortgage loans in Massachusetts. (*Id.* ¶¶ 54-56).

As noted, plaintiffs seek a declaration that the mortgage is void. As a practical matter, what plaintiffs are actually requesting is to keep the house and cancel the debt (and, possibly, have all the payments they have made on their mortgage returned to them). In short, they want to obtain the house for free.

Not surprisingly, neither law nor equity requires (or permits) such a result. Even if America's Wholesale Lender had violated Chapter 255E, § 2, there is no authority for the proposition that the remedy for that violation is to void the mortgage.

To begin, the statute principally provides for criminal penalties and civil government enforcement, and the precise scope of any private right of action to enforce the statute is unclear.[5] The statute provides that "[n]othing in this section shall limit the right of any

---

[4] As noted above, defendants have produced evidence that "America's Wholesale Lender" was simply a tradename used by Countrywide Home Loans. However, at this stage, the Court must take all the facts alleged in the complaint as true, and it will therefore assume that America's Wholesale Lender was not a licensed entity.

[5] Chapter 255E, § 10, titled "Penalties," provides that "[w]hoever violates section 2 or any rule or regulation promulgated thereunder shall be punished by a fine of not more than $2,000 or by imprisonment in the house of correction for not more than 2 ½ years or by imprisonment in state prison for not more than 5 years, or both such fine and imprisonment." Mass. Gen. Laws ch. 255E, § 10. Section 11 provides for additional monetary penalties that the Commissioner of Banks may impose by order. *Id.*, § 11.

individual or entity who has been injured as a result of any violation of this chapter by a licensee, or any person other than a licensee or exempt person under section 2, to bring an action to recover damages or restitution in a court of competent jurisdiction." Mass. Gen. Laws ch. 255E, § 11(b). For present purposes, the Court will assume that the statute would in fact permit a private right of action against a non-licensed entity for making a loan without a license.

Even assuming, however, that such a right of action exists, the statute clearly requires causation (that is, the injury must have been "a result of" the violation). Furthermore, the statute provides only for the recovery of "damages" or "restitution." A declaration that the mortgage is void is an equitable remedy that the Court will not read into the statute. *See Loffredo v. Ctr. for Addictive Behaviors*, 426 Mass. 541, 547 (1998) ("[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." (alteration in original) (quoting *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979)).[6]

Plaintiffs provide no argument for why such an extraordinary remedy should be available, and the Court cannot fathom one. The money borrowed by plaintiffs was surely not fictitious; they used it to buy the property. And it is entirely unclear how any failure of America's Wholesale Lender to obtain a license, if true, caused plaintiffs any injury at all, much less damages in the amount of the entire value of their mortgage. Count 1 will therefore be dismissed.

Because the mortgage is not void for America's Wholesale Lender's failure to obtain a

---

[6] The only authority plaintiffs provide is a single case from the trial-level court of Seminole County, Florida, applying Florida law, that was overturned on appeal. Final Judgment, *Bank of Am., N.A. v. Nash*, No. 59-2011-CA-004389 (Fla. Cir. Ct. Oct. 16, 2014) (Am. Compl. Ex. C), *overturned by* 200 So. 3d 131 (Fla. Dist. Ct. App. 2016) (Mot. to Dismiss Ex. C). A Florida trial court's incorrect interpretation of Florida law has no bearing on this case. Plaintiffs acknowledge this, explaining that they cited *Nash* "for the purposes of providing legal and factual background for a theory of liability which has not ever been litigated in the [F]irst [C]ircuit." (Pls. Mem. in Opp. to Mot. to Dismiss at 3).

license, there is no basis to conclude that the assignment from MERS to BNY Mellon should be void. Therefore, Count 2 will also be dismissed.

**B.**     **Count 3**

A covenant of good faith and fair dealing is implied in every Massachusetts contract, including mortgage contracts. *See T.W. Nickerson, Inc. v. Fleet Nat'l Bank*, 456 Mass. 562, 569-70 (2010). Count 3 alleges that Shellpoint and BNY Mellon breached the implied covenant of good faith and fair dealing by (1) sending a foreclosure acceleration letter that "inaccurately stated that BNY Mellon, as Trustee, was the creditor to whom the Plaintiffs' debt was owed and that it had the legal right to foreclose on the Plaintiffs' property if the Plaintiffs did not cure their default"; and (2) filing a foreclosure petition with the Land Court prior to issuing the acceleration letter, publishing a notice of mortgage sale in the local newspaper, and filing an affidavit of compliance with the registry of deeds. (Am. Compl. ¶¶ 57-62).

As an initial matter, to the extent plaintiffs are alleging that any of the defendants have breached the duty of a mortgagee to act in good faith and to use reasonable diligence in exercising a power of sale, the complaint fails to state a claim. (*See* Am. Compl. ¶ 59 (citing *W. Roxbury Co-op Bank v. Bowser*, 324 Mass. 489, 492 (1949) (discussing the duty of reasonable diligence)). That duty requires only that the foreclosing party make reasonable efforts to sell the property for the highest possible value; it is inapplicable where, as here, there has been no sale of the underlying property. *See MacKenzie v. Flagstar Bank, FSB*, 738 F.3d 486, 493 & n.4 (1st Cir. 2013).

As discussed above, the alleged failure of America's Wholesale Lender to obtain a license to issue mortgage loans in Massachusetts does not make the mortgage, or the assignment of the mortgage to BNY Mellon, void. Therefore, the sending of a foreclosure acceleration letter indicating that BNY Mellon had the right to foreclose on the property if plaintiffs did not cure

their default was not a breach of the covenant of good faith and fair dealing.

Plaintiffs further claim that Shellpoint and BNY Mellon filed a foreclosure petition prior to issuing the acceleration letter, publishing a notice of the mortgage sale, and filing an affidavit of compliance. The complaint provides no details as to when the foreclosure petition—or the notice of mortgage sale or affidavit of compliance, if any exist—was filed. Defendants complain that without a copy of the foreclosure petition or any additional details, they are "left to guess what specific documents are being referenced in the Amended Complaint," and assert that the only foreclosure-related activity that has taken place on plaintiffs' mortgage is the sending of the acceleration letter. (Mot. to Dismiss at 15 & n.5). However, plaintiffs are not required to prove their claims at this stage of litigation, only to plausibly allege facts that, if true, would entitle them to relief. The Court cannot rely on defendants' representation that no other foreclosure activity has taken place. If indeed the facts are as defendants represent, a summary judgment motion may be appropriate, but dismissal on that basis at this stage is inappropriate.[7]

### C.    Count 4

Count 4 alleges that defendants breached the "Power of Sale provision" of the mortgage agreement by "failing to comply with the requirements of a foreclosure by power of sale as described in Count [3]." (*Id.* ¶¶ 63-68).

Defendants argue that this claim must be dismissed because plaintiffs have failed to

---

[7] Indeed, plaintiffs' opposition brief virtually concedes that the foreclosure petition has not been filed, or was not filed until after the sending of the acceleration letter. (*Compare* Pls. Mem. in Opp. Mot. to Dismiss at 6 (filed Oct. 31, 2017) ("[T]he Defendants have referred this matter to a foreclosure law firm and a Foreclosure Petition is in the process of being prepared and filed in the land court if it has not been done so already."), *with* Am. Compl. ¶ 23 ("On July 10, 2017, the Defendant, Shellpoint, issued a foreclosure acceleration letter to the Plaintiffs on behalf of Bank of New York Mellon . . . ."), *and* Am. Compl. ¶ 61 ("Defendants also breached their duty of good faith by filing a foreclosure petition with the land court prior to issuing the acceleration letter . . . .")). If plaintiffs' counsel filed a pleading stating that a foreclosure petition had been filed without having made an "inquiry reasonable under the circumstances" as to the truth of that statement, that would be troublesome, to say the least. *See* Fed. R. Civ. P. 11(b).

identify a particular contract provision in the mortgage that was breached or how they were damaged by such breach. But plaintiffs do allege that the "Power of Sale provision" was breached. (Am. Compl. ¶ 64). That provision requires the lender to give notice to the borrower prior to acceleration, including a notice that "failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property." (Am. Compl. Ex. A ¶ 22). It further provides that "[i]f the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law." (*Id.*). It is at least plausible that defendants filed a foreclosure petition prior to sending the acceleration letter, and therefore the complaint, taken at face value, plausibly states a claim for breach of contract. Again, whether that is supported by any evidence is a separate question.

### D. Counts 5 and 6

Counts 5 and 6 allege that defendants Bank of America and Shellpoint, respectively, violated Mass. Gen. Laws ch. 93A by failing to offer plaintiffs a modification of their loan under the DOJ settlement or HAMP.

First, with respect to HAMP, defendants argue that plaintiffs have failed to allege facts to establish that their mortgage loan was eligible for a HAMP modification because they have not alleged that their loan is either owned or backed by Fannie Mae or Freddie Mac or that defendants had entered into a relevant servicer participation agreement. *See Ording v. BAC Home Loans Servicing, LP*, 2011 WL 99016, at *8 (D. Mass. Jan. 10, 2011). Therefore, according to defendants, it was not an unfair or deceptive business practice for them to refuse to extend plaintiffs a HAMP modification.

While hardly a model of clarity, the complaint does plausibly allege that plaintiffs' loan was of the type that could qualify for a HAMP modification. Specifically, plaintiffs allege that they are eligible for a HAMP Tier 2 Principal Reduction Alternative modification. (Am. Compl. ¶¶ 33, 35). They allege that Bank of America concluded that they did not qualify for HAMP Tier 2 because "the proposed modified monthly payment that [Bank of America] could offer . . . was outside the range of 25% to 42% of [plaintiffs'] gross monthly income." (*Id.* ¶ 35). They also have attached to their amended complaint the April 6, 2016 modification offer letter from Bank of America, which states that plaintiffs' loan was not eligible for the Tier 2 program:

> In performing our underwriting of a potential modification, the proposed modified monthly payment that we could offer you, which includes a modified monthly principal and interest payment on your first-lien mortgage loan plus property taxes, hazard insurance premiums, and any homeowners dues, was outside the required range of 25% to 42% of your monthly gross income (your income before taxes and other deductions), which we verified as $13,794.35. If you believe this verified income is incorrect, please call us at the number provided below.

(Am. Compl. Ex. E at 6). That explanation does not state that plaintiffs' loan was not HAMP-eligible. Taken as a whole, the allegations are sufficient to make a plausible claim that plaintiffs' loan was HAMP-eligible.[8]

Second, defendants argue that plaintiffs lack standing to make a claim under the DOJ settlement because that document explicitly states that it does not create any third-party-beneficiary rights. (Def. Mot. to Dismiss Ex. D, § 21.A ("[The settlement is] intended to be for the benefit of the Parties only and does not create any third-party rights.")); *see MacKenzie*, 738 F.3d at 491 ("[B]orrowers are not third-party beneficiaries of agreements between mortgage

---

[8] The Court also notes that the first page of plaintiffs' mortgage document, attached to the amended complaint, states: "MASSACHUSETTS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS." (Am. Compl. Ex. A at 1). In addition, the complaint refers to Bank of America's "SPA," which likely stands for "Servicer Participation Agreement." (Am. Compl. ¶ 37); *In re Bank of Am. Affordable Modification Program Contract Litig.*, 2011 WL 2637222, at *2 (D. Mass. July 6, 2011).

lenders and the government.").[9]  That may be true, but plaintiffs are not making a claim under

the settlement agreement itself; rather, they claim that the failure to abide by it is a deceptive and

unfair business practice within the meaning of Chapter 93A.[10]

"[A] violation of the HAMP guidelines may . . . , under some circumstances, provide a

basis for a claim under chapter 93A." *Markle v. HSBC Mortg. Corp. (USA)*, 844 F. Supp. 2d

172, 185 (D. Mass. 2011).  But "merely alleging a violation of the HAMP guidelines is not

sufficient to state a claim under chapter 93A.  A plaintiff must also allege that the violation is

unfair or deceptive and that recovery is compatible with the objectives of enforcement

mechanisms contained in the underlying statute." *Id.*  It is far from clear whether a violation of a

settlement agreement to which plaintiffs are not a party or beneficiary can form the basis of a

Chapter 93A claim.  *See Lawrence v. Bank of Am., N.A.*, 2016 WL 868172, at *2 (D. Mass. Mar.

4, 2016) (expressing skepticism that the plaintiff could base a Chapter 93A claim on violation of

the same DOJ settlement at issue here).  But it is certainly the case that, as with violations of

HAMP, a complaint must allege actual unfair or deceptive conduct, not merely a violation of

such a settlement agreement.

"Although Chapter 93A does not specifically define 'unfair' or 'deceptive,' the

Massachusetts courts have applied a three-step analysis to determine whether conduct is unfair

under the Act.  They consider '(1) whether the practice is within at least the penumbra of some

---

[9] Because plaintiffs refer to the DOJ settlement agreement extensively in their amended complaint, the
Court may properly rely on that agreement.

[10] Defendants also argue that Shellpoint was not a party to the DOJ settlement and therefore had no
obligation to make any modification under it.  But the amended complaint alleges that Shellpoint "was at all times
obligated as a sub-servicer of [Bank of America] to honor the terms of [Bank of America]'s SPA with the
government and the 2014 DOJ settlement, as [Bank of America] remained the investor on this loan."  (Am. Compl.
¶ 37).  Defendants ignore this allegation and do not clarify the relationship between Shellpoint and Bank of
America; taking this allegation as true, it is plausible that Shellpoint could (as the bank's agent) have obligations
under the DOJ settlement.

common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers.'" *Morris v. BAC Home Loans Servicing, LP*, 775 F. Supp. 2d 255, 258-59 (D. Mass. 2011) (citing *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 243 (1st Cir. 2005)).

As to Bank of America, the complaint alleges that the bank falsely stated that plaintiffs were not eligible for HAMP Tier 2 because the proposed monthly payment it could offer them was outside the range of 25% to 42% of their gross monthly income. (Am. Compl. ¶ 35). The complaint alleges that their gross monthly income was $12,086 and the bank was supposed to use that figure, (Am. Compl. ¶ 33), but the letter telling them they were ineligible for HAMP Tier 2 indicated that the bank had verified their monthly income at $13,794.35, (*id.* Ex. E at 6). It alleges that Bank of America "intentionally denied the Plaintiffs for a DOJ modification so that it could retain moneys which had been allocated under the DOJ RMBS settlement to reduce homeowners' mortgages, thereby enriching itself at the Plaintiffs' expense," and that "[the bank]'s decision to decline the Plaintiffs for a DOJ and Principal Reduction modification was done for the illicit purpose of maximizing its profits from the revenue it would recover from lucrative foreclosure fees, DOJ settlement funds which it refused to disburse through principal reduction and did so ***at the expense of and to seek unfair advantage over the Plaintiffs***." (Am. Compl. ¶¶ 72, 74). And it alleges that "[a]s a result of [the bank]'s unfair and deceptive practices, the Plaintiffs suffered $244,500 in needlessly incurred mortgage arrearages, lost equity and damage to their credit and attorney's fees." (*Id.* ¶ 73).

Those allegations alone are not sufficient to state a claim for violation of Chapter 93A by Bank of America. While there may have been a disagreement about the gross-monthly-income

amount used to determine plaintiffs' eligibility, that is not enough.  The bank's denial explicitly provided a telephone number to call in the event of such a disagreement.  (Am. Compl. Ex. E at 6).  Plaintiffs do not allege that they attempted to take advantage of that avenue of redress and were rebuffed.  The mere fact of a discrepancy in that figure is not a sufficient basis to claim that Bank of America's conduct in using $13,794.35 was unfair or deceptive, and plaintiffs do not allege that they should have been eligible for a HAMP modification even with that higher income.

The allegations that Bank of America intentionally denied plaintiffs a modification in order to keep the money it would otherwise have to spend on the DOJ settlement, and to reap revenue from "lucrative" foreclosure fees, are conclusory allegations without any specific factual support.  While the Court is required to accept well-pleaded factual allegations, the Court need not assume that allegations such as these are true.  *Iqbal*, 556 U.S. at 681 ("[T]he allegations are conclusory and not entitled to be assumed true.").  Therefore, to the extent Count 5 is based on Bank of America's April 2016 modification offer, it does not state a claim.

As for Shellpoint, the complaint makes similar unsupported allegations that its purposes in refusing modification were to assist Bank of America in keeping the settlement money and to "personally reap lucrative foreclosure fees."  (Am. Compl. ¶¶ 78-79, 81).  The complaint vaguely alleges that Shellpoint's decision to deny plaintiffs a modification was based on "false data," but does not specify what data Shellpoint relied on or why it was false.  (*Id.* ¶ 81).  However, the complaint further alleges that, after Shellpoint offered plaintiffs an allegedly inadequate modification, a representative of Shellpoint falsely told plaintiffs' counsel in November 2016 that "neither Shellpoint [n]or [Bank of America] participates in HAMP or the DOJ settlement or that Shellpoint had no obligation to comply with HAMP or the DOJ settlement."  (Am. Compl.

¶¶ 43-44).

False representations concerning a borrower's eligibility for a certain program have been considered sufficiently unfair or deceptive to state a claim under chapter 93A. *Markle*, 844 F. Supp. 2d at 186; *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342 at 353-54 (D. Mass. 2011). As discussed above, the Court is assuming that Shellpoint was a subservicer for Bank of America and was therefore acting as Bank of America's agent. (*See*, *e.g.*, Am. Compl. ¶¶ 37, 42, 44). That allegation, therefore, sufficiently—if barely—states a claim under *Iqbal* and Counts 5 and 6 will not be dismissed.

### E.    Count 7

Count 7 alleges that Bank of America's refusal to offer a modification under the DOJ settlement or HAMP breached the implied covenant of good faith and fair dealing implied in the mortgage. (Am. Compl. ¶¶ 82-87).

"The covenant of good faith and fair dealing requires that 'neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract.'" *Young v. Wells Fargo Bank*, 717 F.3d 224, 237-38 (1st Cir. 2013) (quoting *T.W. Nickerson, Inc.*, 456 Mass. at 570). But "[t]he concept of good faith 'is shaped by the nature of the contractual relationship from which the implied covenant derives,' and the 'scope of the covenant is only as broad as the contract that governs the particular relationship.'" *Id.* (quoting *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 385 (2005)). "As a consequence, the implied covenant cannot 'create rights and duties not otherwise provided for in the existing contractual relationship,' and instead focuses on 'the manner of performance.'" *Id.* (quoting *Ayash*, 443 Mass. at 385).

Here, plaintiffs point to no provision of the mortgage, or anything inherent in the mortgagor-mortgagee relationship, that would obligate Bank of America to modify its terms

16

upon customer request.  While the DOJ settlement and HAMP may create obligations outside the mortgage, the covenant of good faith and fair dealing implied in the mortgage contract extends only to the performance of the contract itself.  *See MacKenzie*, 738 F.3d at 493.  Because there is nothing in the contract or contractual relationship that required the bank to modify the loan, Count 7 will therefore be dismissed.

## IV.    <u>Conclusion</u>

For the foregoing reasons, defendants' motion to dismiss is GRANTED in part and DENIED in part.  Counts 1, 2, and 7 are dismissed as to all parties.  The motion to dismiss is otherwise denied.

**So Ordered.**

/s/  F. Dennis Saylor
F. Dennis Saylor, IV
United States District Judge

Dated:  January 11, 2018